DJW/bh

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**SAFETECH INTERNATIONAL, INC.,**

      **Plaintiff, Counterclaim Defendant and Judgment Debtor,**

v.

**AIR PRODUCTS AND CONTROLS, INC.,**

      **Defendant, Counterclaimant and Judgment Creditor.**

Civil Action

No. 02-2216-JAR-DJW

## **MEMORANDUM AND ORDER**

    Pending before this Court is the Motion to Quash or Modify Subpoena (doc. 155) filed by R. Gaylen Davenport ("Davenport"). Davenport moves to quash or modify the subpoena duces tecum served on him by Defendant and Counterclaimant Air Products and Controls, Inc. ("Air Product"). Also before the Court is Air Products' Cross-Motion to Compel (doc. 162), which seeks an order compelling Davenport to respond to the subpoena. For the reasons set forth below, the Court will deny Davenport's Motion to Quash or Modify, except to the extent he seeks additional time to respond to the subpoena. In addition, the Court finds Air Products' Cross-Motion to Compel to be moot, and will deny it as such.[1]

---

[1] The Court has reviewed Davenport's motion and agrees with Air Products that it appears Davenport did not satisfy his duty to confer with Air Products prior to filing his motion. At the same time, however, the Court notes that Air Products filed its cross-motion to compel without satisfying the same duty to confer. Due to the advanced stage of this lawsuit, the Court will entertain both motions notwithstanding the fact that the parties have not demonstrated that they made reasonable efforts to confer prior to filing these motions.

**I.	Factual Background**

Safetech filed this lawsuit against Air Products on May 10, 2002, asserting claims for breach of contract and tortious interference. Air Products counterclaimed against Safetech for fraud and breach of contract and to recover for goods sold on account. Air Products also filed a counterclaim for fraud against Davenport, who was President of Safetech.

The final Pretrial Conference was held on September 29, 2003, and the Pretrial Order was entered on September 9, 2003. Several months later (in February 2004), unbeknownst to Air Products, Safetech transferred its assets to another company, WSA.

A jury trial was held on June 15 - 22, 2004. At trial, the District Judge directed a verdict in favor of Davenport and Safetech on the fraud counterclaims. The remaining claims were submitted to the jury. The jury entered a verdict against Safetech on Air Products' remaining counterclaims against Safetech and awarded Air Products more than $200,000.00 in damages. The jury found in favor of Air Products on Safetech's claims. Safetech did not appeal the judgment, and the judgment is now final.

Following the trial, Air Products served, pursuant to Federal Rule of Civil Procedure 69, a subpoena duces tecum on Davenport in aid of execution on the judgment entered against Safetech. The subpoena was served on September 1, 2004. The subpoena was amended on September 7, 2004 to clarify that Davenport was not being compelled to provide deposition testimony but only to produce various documents identified in the subpoena.

The subpoena asked Davenport to produce the following:

> 1.	All documents reflecting the payment or transfer of any cash, assets or the proceeds of any assets of Safetech to you during the period May, 2002 through the present date.

2

2. All documents reflecting any payment or transfer of cash or any other asset to you: (a) by WSA or WSA Annunciators; or (b) by another person in connection with the sale or transfer of the assets of Safetech to WSA or WSA Annunicators.

3. For the period May 1, 2002 through the present date, all documents reflecting any transfer of cash, assets or the proceeds of any assets of Safetech to: (a) any of your relatives; (b) any corporation, partnership or business venture in which you had or have an ownership interest; (c) any co-owner of any such corporation, partnership or business venture; and (d) any person to whom you are or were obligated by reason of any loan, extension of credit, personal guaranty or other debt or liability.

4. All documents reflecting any payment or transfer of cash or any other asset by WSA or WSA Annunciators, or by any other person in connection with the sale or transfer the assets of Safetech to WSA or WSA Annunciators, to: (a) any of your relatives; (b) any corporation, partnership or business venture in which you had or have an ownership interest; (c) any co-owner of any such corporation, partnership or business venture; or (d) any person to whom you are or were obligated by reason of any loan, extension of credit, personal guaranty or other debt or liability.

5. For the period May, 2002 through the present date, all documents reflecting any loan made by Safetech to you, including but not limited to all documents reflecting the terms, security or collateral given for, and any payments made on such loan.

6. For the period May 1, 2000 through the present date, all documents reflecting any loan made by Safetech to you, including but not limited to all documents reflecting the terms, security or collateral give for, and any payments made on any such loan.

7. For the period May 1, 2000 through the present date, all documents reflecting: (a) any lien, security interest or encumbrance of your personal assets, or any guaranty given by you, to secure any loan or extension of credit to or liability of Safetech; and (b) all documents reflecting the payment, satisfaction, cancellation, or release of any such loan, extension of credit, liability, lien, security interest or encumbrance.

8. For the period May 1, 2000 through the present date, all documents reflecting: (a) your ownership interest in any corporation, partnership or business venture other than Safetech; or (b) your receipt of income or money from any source other than Safetech.

> 9.   For the period May 1, 2002 to the present date, all documents reflecting: (a) the receipt or transfer in a single transaction of any cash, stocks, bonds or similarly liquid assets by you in an amount exceeding $5,000; or (b) your purchase or acquisition of any asset with a value greater than $5,000.
>
> 10.   Your federal income tax returns, including all schedules and attachments, for tax years 2001, 2002 and

The subpoena requested that Davenport provide the documents on September 14, 2004.

## II.   Davenport's Motion to Quash or Modify

### A.   Introduction

Davenport seeks to quash or modify the Air Products subpoena pursuant to Federal Rules of Civil Procedure 45(c)(3)(A) and 45(c)(3)(B). Davenport contends that the subpoena should be quashed or modified under subsection (A) because the subpoena (1) subjects him to undue burden and is intended to harass him; (2) requires disclosure of documents protected under the attorney-client privilege and work product doctrine; and (3) fails to allow him a reasonable time to respond. He also seeks to quash or modify the subpoena under subsection (B) on the basis that it requires him to disclose trade secrets and other confidential commercial information.

### B.   Undue Burden and Alleged Harassing Nature of the Subpoena

The Court will first address Davenport's arguments that the subpoena should be quashed or modified because it imposes an undue burden on him and is intended to harass him. Rule 45(c)(3)(A)(iv) requires a court to quash or modify a subpoena if the subpoena "subjects a person to undue burden." The

party seeking to quash a subpoena has the burden to demonstrate that complying with the subpoena would be unduly burdensome.[2]

Davenport first argues that the subpoena is unduly burdensome because he is not the judgment debtor and his personal financial information is totally irrelevant to Air Products' ability to execute on the judgment it obtained against Safetech. Davenport asserts that the intent of the subpoena is to harass him and to cause him to personally incur unnecessary expense.

Air Products counters that the subpoena is not unduly burdensome and that Federal Rule of Civil Procedure 69 fully supports its right to obtain discovery from Davenport in order to locate Safetech's assets. Air Products argues that the ten categories of documents sought in the subpoena are narrowly tailored to seek discovery concerning two areas: (1) the sale of Safetech's assets to WSA, and (2) the transfer of Safetech assets and/or their proceeds to Davenport or for his benefit. Air Products contends that it is entitled to this discovery because of Davenport's close ties to Safetech. According to Air Products, Davenport was the founder, president, secretary, and treasurer of Safetech, a personal guarantor of many of Safetech's liabilities, and either the majority or sole shareholder of Safetech. Davenport does not deny these close ties to Safetech.

Air Products represents that "[t]here is ample reason to believe that Davenport stripped Safetech of assets and that Safetech's assets or their proceeds were transferred for the benefit of Davenport" immediately prior to and during the pendency of this lawsuit.[3] Air Products also represents that "on

---

[2] *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D. Kan. 1996).

[3] Air Products Mem. in Opp. to Davenport Mot. to Quash (doc. 159) at p. 4.

information and belief," proceeds of the sale of Safetech assets were partly used to pay Safetech debts that Davenport had personally guaranteed.[4] Air Products thus contends that it is entitled to discover the documents sought in the subpoena to trace Safetech's assets and to aid in its execution of the judgment against Safetech. Accordingly, Air Products contends that the subpoena is not harassing and does not impose any type of undue burden against Davenport.

Pursuant to Federal Rule of Civil Procedure 69, a judgment creditor may, in aid of the execution of a money judgment, obtain discovery from any person in the manner provided in the Federal Rules of Civil Procedure or in the manner provided by the practice of the state in which the district court sits.[5] The scope of discovery in aid of execution is very broad.[6] Accordingly, the judgment creditor is "allowed discovery to find out about assets on which execution can issue or about assets that have been fraudulently transferred or are otherwise beyond the reach of execution."[7]  Ordinarily, third parties may be examined only about the assets of the judgment debtor and not their own assets; however, an exception is made where the relationship between the judgment debtor and the non-party is so close as "to raise a reasonable doubt about the bona fides of [any] transfer of assets between them.'"[8] Where the relationship between the debtor and a third party is sufficient to raise such a doubt, there is a presumption running in favor of full

---

[4]*Id*. at 3-4.

[5]Fed. R. Civ. P. 69(a).

[6]12 Charles A. Wright, Arthur R. Miller, and Richard L. Marcus, 12 *Federal Practice and Procedure*, § 3014 at 161 (2d ed. 1997).

[7]*Id*. at 162.

[8]*Credit Lyonnais, S.A. v. SGC Int'l, Inc*. 160 F.3d 428, 431 (8th Cir. 1998).

6

discovery of any matters that are arguably related to the judgment creditor's efforts to trace the debtor's assets and execute on the judgment.[9]

Here, the Court agrees with Air Products that the subpoena is tailored to seek discovery from Davenport concerning the sale of Safetech's assets to WSA, the transfers of Safetech assets during the period prior to and during the pendency of this lawsuit, and whether such transfers may have been fraudulent. The close relationship between Davenport and Safetech, in conjunction with Safetech's transfer of all of its assets shortly before trial,[10] raises questions about the bona fide nature of the transfers and brings into play the presumption that full discovery is warranted. The Court therefore finds that the subpoena seeks discoverable information, and the Court rejects Davenport's arguments that the subpoena is harassing or unduly burdensome because of the nature of the documents requested.

The only other argument Davenport makes regarding the undue burden and harassing nature of the subpoena is that it seeks "all documents" in the various categories. For example, Request No. 1 seeks "*[a]ll documents* reflecting the payment or transfer of any cash, assets or the proceeds of any assets of Safetech to during the period May, 2002 through the present date." Similarly, Request No. 2 seeks "*[a]ll documents* reflecting any payment or transfer of cash or any other asset to you . . ..by WSA . . . ."

Davenport contends that by requesting "all documents," the subpoena is unduly burdensome and harassing on its face. In support, Davenport cites the undersigned Magistrate Judge's opinion in *Aikens*

---

[9]*Id*.; *U. S. v. Neumann*, No. Civ. A. 86-0034-F, 1999 WL 156151, at *1 (D. Mass. Mar. 5, 1999).

[10]The Kansas Supreme Court has held that a party's transfer of assets after the party is sued or threatened with suit is an indicia or "badge" of fraud. *See McCain Foods USA, Inc. v. Central Processors, Inc*., 275 Kan. 1, 7-8, 61 P.3d 68, 73-74 (2002).

7

*v. Deluxe Financial Services, Inc.*[11] In *Aikens,* the Court recognized the well-settled principle that a discovery request "is unduly burdensome on its face if it uses the omnibus term 'relating to' or 'regarding' with respect to a general category or group of documents."[12] Contrary to what Davenport appears to be asserting, however, *Aikens* does not stand for the proposition that a request for "all documents" is unduly burdensome on its face.

The terms "relating to" or "regarding" are not found in the subpoena's document requests. The Court therefore finds the *Aikens* rule inapplicable here, and does not find the subpoena unduly burdensome or harassing on its face merely because it requests "all documents" of a certain type.

In light of the above, the Court will decline to quash the subpoena on grounds that it is unduly burdensome or harassing.

### C.    Trade Secret and Other Confidential Commercial Information

The Court will next address Davenport's contention that the subpoena should be quashed or modified under subsection (c)(3)(B)(i) of Rule 45. That subsection requires a court to quash a subpoena if it will result in "disclosure of a trade secret or other confidential research, development, or commercial information."[13] Davenport asserts that the subpoena asks him to produce "trade secret and other confidential commercial information." The only argument Davenport makes in support of this assertion is

---

[11]217 F.R.D. 533 (D. Kan. 2003).

[12]*Id.* at 538.

[13]Fed. R. Civ. P. 45(c)(3)(B)(i).

8

that Safetech "is no longer a functioning entity [whose] . . . assets were sold to another company who is a competitor with Air Products."[14]

Rule 45(c)(3)(B)(i) does not define the terms "trade secret" and "confidential research, development, or commercial information." Case law, however, has defined these terms to mean "information, which, if disclosed would cause substantial economic harm to the competitive position of the entity from whom the information was obtained."[15]

The party moving to quash a subpoena under Rule 45(c)(3)(B)(i) has the burden to establish that the information sought is a trade secret or other confidential information protected by the Rule and that its disclosure will work a clearly defined and serious injury to the moving party.[16] The claim "must be expressly made and supported by a sufficient description of the nature of the documents, communications, or things not produced so as to enable the demanding party to contest the claim."[17] The Court cannot find that Davenport has satisfied this burden. He has failed to show that any specific or serious injury is likely to result from the disclosure of this alleged trade secret information. In addition, he has failed to describe the documents that he contends contain trade secrets, let alone describe them with sufficient

---

[14]Davenport Mem. in Supp. of Mot. to Quash (doc. 156) at pp. 3-4.

[15]*Stewart v. Mitchell Transport,* Civ. A. No. 01-2546-JWL, 2002 WL 1558210, at *8 (D. Kan. July 8, 2002) (citing *In re S3 LTD.*, 242 B.R. 872, 876 (Bankr. E.D. Va. 1999) (quoting *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 697 (D. Nev. 1994))).

[16]*Id.* at *8 (citing *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1025 (Fed. Cir. 1986); *Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enter., Inc.*, 160 F.R.D. 70, 72 (E.D. Pa. 1995)).

[17]*Id.* at *8 (quoting *Diamond State Ins.*, 157 F.R.D. at 697-98).

particularity, so as to enable Air Products to contest his trade secret claim. The Court will therefore decline to grant the motion to quash under Rule 45(c)(3)(B)(i).

### D.     Privileged and Work Product Materials

Davenport also argues that the subpoena should be quashed or modified pursuant to Rule 45(c)(3)(A)(iii) because it requires him to disclose attorney-client privileged documents and work product materials. Rule 45(c)(3)(A)(iii) requires a court to quash a subpoena if it will result in "disclosure of privileged or other protected matter [where] no exception or waiver applies."[18]

Davenport does not identify any documents that he contends are privileged and/or protected work product. He merely states that he "will be preparing a privilege log to be filed forthwith as to such documents."[19]

As the party objecting to a subpoena on the basis of privilege and work product protection, Davenport bears the burden of establishing that the privilege/protection applies.[20] To carry the burden, Davenport "must describe in detail the documents or information to be protected and provide precise reasons for the objection to discovery."[21] A blanket claim as to the applicability of a privilege does not

---

[18]Fed. R. Civ. P. 45(c)(3)(A)(iii).

[19]Davenport Mem. in Supp. of Mot. to Quash (doc. 156) at p. 3. *See also* Davenport Resp. and Objections to Air Product's Subpoena (doc. 154) at pp. 3, 4, 6-9 ("A privilege log shall be prepared and filed forthwith as to such [privileged and work product] documents.").

[20]*See Stewart,* 2002 WL 1558210 at *8.

[21]*Id*. (citing Fed. R. Civ. P. 45(d)(2)). Rule 45(d)(2) expressly provides that "when information subject to a subpoena is withheld on a claim that such information is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications or things not produced that is sufficient to enable the demanding
(continued...)

10

satisfy the burden of proof.[22] Furthermore, the party claiming privilege and work product protection must satisfy its burden prior to or at the time the trial court is asked to rule upon the existence of the privilege.[23] A party's failure to do so is not excused because the document is later shown to be one that would have been privileged if a timely showing had been made.[24]

Davenport has failed to satisfy these requirements with respect to his privilege and work production objections. Davenport did not provide a privilege log when he served his objections to the subpoena or when he filed the instant Motion to Quash or Modify. Davenport's mere statement of his intention to "file forthwith" a privilege log does not satisfy this burden. No privilege log has ever been submitted to the Court, and the docket does not reflect that any such log was ever filed or served on Air Products.

In short, Davenport has not provided the Court with any information upon which it could base a determination that any of the requested documents are attorney-client privileged or protected work product materials. Thus, the Court finds that Davenport has failed to make a timely showing that any documents responsive to subpoena are protected by the attorney-client privilege or work product doctrine. The Court will therefore decline to quash or modify the subpoena under Rule 45(c)(3)(A)(iii).

---

[21](...continued)
party to contest the claim."

[22]*Stewart,* 2002 WL 1558210 at *8.

[23]*Sonnino v. Univ. of Kan. Hosp. Authority,* 221 F.R.D. 661, 668-69 (D. Kan. 2004); *Rural Water Syst. Ins. Benefit Trust v. Group Ins. Adm'rs, Inc.,* 160 F.R.D. 605, 608 (D. Kan. 1995).

[24]*Peat, Marwick Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); *Sonnino,* 221 F.R.D. at 669.

### E. Reasonable Time to Respond

The Court will next address Davenport's argument that the subpoena should be quashed or modified under Rule 45(c)(3)(A)(i) because it fails to allow a reasonable time to respond. The subpoena at issue here was served on September 1, 2004, and it requested that Davenport produce the documents on September 14, 2004.

Rule 45(c)(3)(A)(i) requires a court to quash or modify a subpoena it "fails to allow a reasonable time for compliance." The Rule does not specify what length of time is reasonable. On its face, the thirteen-day period does not appear unreasonable. However, the Court must take into account the underlying facts and circumstances of the particular case when determining the reasonableness of the time allowed for compliance.[25]

Given the nature of the requests and circumstances that Davenport has set forth in his Motion, the Court is inclined to agree that the thirteen days for responding was not a reasonable time. Davenport suggests that he be given an additional thirty days to respond, and Air Products indicates that it has no objection to extending the response period by thirty days.

In any event, the original September 14, 2004 response date has long passed. As the Court is declining to quash the subpoena on any basis, the Court will modify the response date and order that the documents be provided within thirty (30 days) of the date of filing of this Order.

---

[25] *Freeport McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.,* No. Civ. A. 03-1496, 2004 WL 595236, at *9 (E.D. La. Mar. 23, 2004).

### F.      Summary of Ruling

Rule 45(c)(3) provides limited bases under which the Court may enter an order quashing or modifying a subpoena. Absent a valid basis to quash or modify a subpoena, the party receiving the subpoena must comply with it.[26] Davenport has failed to establish that any of the circumstances set forth in Rule 45 require that the subpoena be quashed. The Court therefore denies Davenport's Motion to the extent it seeks to quash the subpoena. Davenport has also failed to establish that any circumstances exist which require the Court to modify the substance of the subpoena's document requests. Davenport has shown, however, that the thirteen-day time period for compliance is unreasonable, and the Court will modify the subpoena to allow Davenport thirty days to respond.

### III.    Air Products' Cross-Motion to Compel

In its Cross-Motion, Air Products seeks to compel Davenport to respond to the subpoena. Given the Court's ruling on Davenport's Motion to Quash or Modify, Air Products's Cross-Motion is moot. The Court will therefore deny the Cross-Motion as moot.

**IT IS THEREFORE ORDERED** that Gaylen Davenport's Motion to Quash or Modify Subpoena (doc. 155) is denied in all respects except as to Davenport's request that the subpoena be modified to provide additional time to comply. Davenport shall comply with the subpoena within thirty days of the date of filing of this Order.

**IT IS FURTHER ORDERED** that Air Products and Controls, Inc.'s Cross-Motion to Compel (doc. 162) is denied as moot.

---

[26]*Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997).

**IT IS FURTHER ORDERED** that each party shall bear its/his own expenses and attorney fees incurred in connection with these motions.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 25th day of January 2005.

s/David J. Waxse
David J. Waxse
United States Magistrate Judge

cc:   All counsel and *pro se* parties